UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALLAS KIM SCHULTZ,

    Plaintiff,                                Civil Action No. 11-10611

v.                                          HON. NANCY G. EDMUNDS
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

       Plaintiff Dallas Kim Schultz brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #12] be DENIED and that Plaintiff's Motion for Summary Judgment [Doc. #10] be GRANTED, remanding this case for further proceedings under the fourth sentence of 42 U.S.C § 405(g).

## **PROCEDURAL HISTORY**

       Plaintiff applied for Disability Insurance Benefits ("DIB") on August 31, 2006, alleging disability as of September 13, 2001 (Tr. 25). After the initial denial of the claim,

Plaintiff requested an administrative hearing, held on March 5, 2009 in Falls Church, VA (Tr. 25). Administrative Law Judge ("ALJ") Deborah A Arnold presided (Tr. 37). Plaintiff, represented by attorney Thomas Plagens, testified by video conference from Flint, Michigan (Tr. 41-49), as did Vocational Expert ("VE") Michele Robb (Tr. 49-54). On May 26, 2009, ALJ Arnold found that although Plaintiff was unable to return to his past relevant work, he could perform a limited range of exertionally light work (Tr. 28-32). On December 17, 2010, the Appeals Council denied review (Tr.1-4). Plaintiff filed for judicial review of the final decision on February 15, 2011.

## BACKGROUND FACTS

Plaintiff, born July 3, 1958, was age 50 when ALJ Arnold issued her decision (Tr. 32, 105). He graduated from high school and worked previously as a press operator (Tr. 121, 125). He alleges disability as a result of a post traumatic stress disorder ("PTSD"), tendinitis, carpel tunnel syndrome ("CTS"), tennis elbow, arthritis of the knee and hand, and back problems (Tr. 121).

### A. Plaintiff's Testimony

Plaintiff testified that he was not currently working, but received a pension from General Motors (Tr. 41-42). He stated that he held a valid driver's license, but seldom drove (Tr. 42). He stated that he lived in a single-family home with his two daughter, 18 and 21 (Tr. 42). He indicated that he and his daughters shared the chores (Tr. 42).

Plaintiff denied that he was able to read, stating that one of his daughters helped him organize his finances (Tr. 42-43). He indicated that he had difficulty spelling and that he was

unsure whether he could read a grocery list (Tr. 43). He stated that he drank occasionally and spent his leisure time hunting and going to tractor pulls (Tr. 44). He indicated that he saw a psychologist on a bimonthly basis (Tr. 44). He stated that he currently took Zoloft, Ativan, Wellbutrin, Seroquel, Klonopin, and Lodine (Tr. 44).

Plaintiff reported that he experienced arthritis in his left knee, back, neck, left wrist, and left fingers (Tr. 45). He denied trouble dressing but stated that he was unable to stand for more than 10 minutes before needing to change position (Tr. 46). He estimated that he could walk "a couple of blocks" without problems, assuming that his left knee wasn't hurting (Tr. 46). He estimated that he could sit for up to one hour (Tr. 46-47).

In response to questioning by his attorney, Plaintiff testified that he seldom drove because he had "a hard time staying focused on the road" (Tr. 47). He reported that after witnessing the horrific accidental death of a coworker in 2001, he experienced difficulty focusing at work (Tr. 47). He indicated that he slept badly, adding that he experienced frequent nightmares about his coworker's accident (Tr. 47-48). Plaintiff alleged that as a result of sleep disturbances, he needed to nap during the day (Tr. 48). He stated that he thought of the deceased coworker often, noting that since witnessing the accident, he had become reclusive (Tr. 49). He indicated that he "let [him]self go at times," and did not change clothes or bathe (Tr. 49).

### B.   Medical Evidence

#### 1. Treating Sources

October, 2005 physical treating notes indicate a diagnosis of arthritis (Tr. 159). A

December, 2005 psychiatric evaluation noted that Plaintiff had been traumatized by witnessing his coworker's death (Tr. 148). Plaintiff appeared anxious but exhibited an intact thought process and judgment (Tr. 149). He was assigned a GAF of 45[1] (Tr. 149). The following month, he showed a "good response" to psychotropic medication (Tr. 150). In February, 2006, treating notes state that his PTSD was deemed in remission but that he "reeked" of cannabis (Tr. 151). May, 2006 treating notes state that Plaintiff wanted to return to work (Tr. 152). The following month, he showed a "good response" to medication (Tr. 153).

In July, 2006, Plaintiff received emergency treatment after a fight with his wife (Tr. 198-202). Plaintiff reported depression as a result of the recent death of a friend and his daughter's health problems (Tr. 201). He reported suicidal ideation but denied suicide attempts (Tr. 201). He appeared disheveled (Tr. 202). Alice M. Sager, LMSW assigned him a GAF of 40[2] (Tr. 202-203). He was discharged after refusing to consent to voluntary hospitalization and (Tr. 203).

In September, 2006, Plaintiff noted that he was currently receiving a disability

---

[1]

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM–IV–TR* ) (4th ed.2000).

[2]

A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 ( *DSM–IV–TR* ) (4th ed.2000).

retirement (Tr. 154). He admitted that he cried often (Tr. 154). Imaging studies of the right knee performed the same month were unremarkable (Tr. 184). October, 2006 imaging studies confirmed a diagnosis of bilateral CTS (Tr. 186). In October, 2007, Plaintiff sought treatment for left index finger numbness (Tr. 248-249). He was advised to see a hand surgeon for symptoms of CTS (Tr. 249).

### 2. Non-treating Sources

In November, 2006, Thomas Martin Horner, PhD performed a consultive psychological evaluation of Plaintiff on behalf of the SSA (Tr. 210-216). Dr. Horner noted the conditions of PTSD and CTS (Tr. 210). Plaintiff acknowledged driving to the appointment but appeared tense and was slow to respond to questions (Tr. 210). He reported eating out regularly and interacting with his daughters and their friends (Tr. 211). He was polite and neatly dressed (Tr. 211). His effect was normal with no unusual behaviors (Tr. 212). Plaintiff reported that he was depressed (Tr. 212). Dr. Horner assigned Plaintiff a GAF of 50 to 55 with an "indeterminate" prognosis[3] (Tr. 215).

The following month, Nadir Khan, D.O. performed a consultive physical examination on behalf of the SSA (Tr. 217-221). Dr. Khan noted a history of CTS and arthritis of the hands and knee (Tr. 217). Plaintiff denied current alcohol use (Tr. 218). He exhibited 5/5 motor strength and a normal range of motion in all joints (Tr. 220). He showed signs of CTS

---

[3] A GAF score of 51–60 indicates "moderate symptoms OR moderate difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM–IV–TR* ) (4th ed.2000).

in the right wrist (Tr. 220). He exhibited a normal gait (Tr. 221).

The same month, Linda K. Brundage, Ed.D performed a Psychiatric Review Technique ("PRT") on behalf of the SSA, finding the presence of an anxiety-related disorder (Tr. 226, 231). She found that Plaintiff experienced moderate psychological limitations in daily living, social functioning, and concentration, persistence, and pace (Tr. 236). A Mental Residual Functional Capacity Assessment, also by Brundage, found that Plaintiff experienced moderate limitations in understanding, remembering, and carrying out detailed instructions; the ability to complete a workweek without psychological interruptions; and the ability to interact appropriately in dealing with the general public (Tr. 223). Brundage concluded that Plaintiff retained the ability to perform unskilled work, adding that he "[m]ay have moderate limitations in memory, concentration and social interaction secondary to PTSD. She stated that Plaintiff retained "the capacity to sustain simple repetitive work" (Tr. 224).

A Physical Residual Functional Capacity Assessment, also performed in December, 2006, found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 241). Plaintiff's ability to push in the upper extremities was deemed limited by bilateral CTS (Tr. 241). He was limited to frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; and occasional climbing of ladders, ropes, or scaffolds (Tr. 242). He was also limited to frequent (as opposed to *constant*) handling, fingering, and feeling with the right hand (Tr. 243). The Assessment did not find visual or communicative limitations but found that Plaintiff should avoid

concentrated exposure to vibration and hazards such as machinery or heights (Tr. 244). The Assessment concluded that Plaintiff's allegations were partially credible, noting that he continued to take care of his personal needs, shopped, and cared for his animals (Tr. 246).

### 3. Material Submitted After the May 26, 2009 Administrative Decision

Counseling notes from December, 2008 state that Plaintiff was advised to "not think about" witnessing the death of his coworker (Tr. 324). The therapist noted that Plaintiff "has many hobbies and activities that we can encourage" (Tr. 324). The following week, Plaintiff was described as worried and angry (Tr. 323). The following month, he appeared "far less focused" on the workplace accident (Tr. 322). The same month, treating notes suggest that Plaintiff's wife was schizophrenic (Tr. 320). Plaintiff reported that he was seeking a divorce and stated that he was solely responsible for the care of a daughter who had sustained a closed head injury (Tr. 314). The following month, Plaintiff reported that he enjoyed rebuilding tractors (Tr. 306). In May, 2009, he indicated that he was less angry at his estranged wife (Tr. 297). In July, 2009, Plaintiff voiced financial concerns about raising his injured daughter (Tr. 291). In September, 2009, his therapist, noting that Plaintiff experienced reading problems, helped him with some legal paperwork (Tr. 285). In October, Plaintiff appeared less anxious (Tr. 280). In the last week of the same month, Plaintiff, frustrated with the process of losing his house in the divorce, stated that he was thinking of hurting himself (Tr. 276). In January, 2010, Plaintiff exhibited a "very positive affect" (Tr. 265).

In October, 2010, M. Shenava, M.D. stated that Plaintiff's relationship with the therapy clinic (see above) was terminated when Plaintiff stated "I'm going to kill [estranged wife]" (Tr. 327). Dr. Shenava stated that a physician reported the threat to the police but that the case was "dropped" (Tr. 327). He stated further that PTSD and stressors brought about by Plaintiff's divorce, financial problems, and care for his disabled daughter created depression, rage, and concentrational problems (Tr. 327-329). Dr. Shenava opined that although Plaintiff had improved, he would "require psychotropic medication for the . . . remainder of his life" (Tr. 330-331).

### C. The Vocational Expert

VE Michele Robb classified Plaintiff's former work as a press operator as unskilled at the light exertional level[4] (Tr. 50). After preliminary questioning, the ALJ posed the following hypothetical question to the VE, taking into account Plaintiff's age, education and work experience:

> Simple repetitive tasks, no working around dangerous, moving machinery, avoiding even moderate exposure to vibration of the hands, and no more than occasional interaction with the public. * * * Are there any jobs such a person could do?

(Tr. 53). The VE, stating that his testimony was consistent with the information found in the

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Dictionary of Occupational Titles ("DOT"), replied that based on the above limitations, the individual could perform the light jobs of dishwasher (3,000 jobs in the regional economy); janitor (2,500); and stock clerk (Tr. 54).

### D. The ALJ's Decision

The ALJ found that as of Plaintiff's date last insured ("DLI") of March 31, 2008, he was not disabled (Tr. 27). Citing Plaintiff's medical records, she found that Plaintiff experienced the severe impairments of PTSD, depression, a history of substance abuse, and bilateral CTS, but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 27-28). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC") for light work with the following limitations:

> simple, repetitive tasks and no working around dangerous moving machinery; lifting up to 20 pounds occasionally; avoiding even moderate vibration of the hands; and no more than occasionally dealing with the public.

(Tr. 29). Citing the VE's job number (see above) the ALJ found that although Plaintiff was unable to perform his former work, he could work as a janitor, stock clerk, and dishwasher (Tr. 31).

The ALJ found that Plaintiff's allegations regarding the "intensity, persistence and limiting effects" of his condition were "not credible to the extent they [were] inconsistent with the above residual functional capacity assessment" (Tr. 29). She cited February, 2006 treatment notes stating that Plaintiff's PTSD was in remission (Tr. 29). She noted that in July, 2006, Plaintiff was found to have "logical and organized thoughts" and did not exhibit

signs of a thought disorder (Tr. 30).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A. The Hypothetical Question

Plaintiff argues here that the limitations of "simple repetitive tasks" found in the ALJ's hypothetical question to the VE did not adequately account for his moderate deficiencies in "concentration, persistence, and pace" as found in the administrative opinion. *Plaintiff's Brief* at 14-15. Plaintiff also contends that the hypothetical question gave "short shrift" to his limitations as a result of CTS. *Id.* at 15-16.

*Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987), sets forth the Sixth Circuit's requirements for a VE's testimony. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the

question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id*. at 779 (internal citations omitted); *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). Because the VE's responses constitute the only evidence supporting a Step Five determination, the hypothetical question must be supported by record evidence. *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.).

Plaintiff's argument that "simple" and "repetitive" work, with nothing more, does not address his moderate deficiencies in concentration, persistence, and pace is directly on point with the Sixth Circuit's decision in *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 (6th Cir. 2010). The *Ealy* Court held that "simple repetitive tasks," without additional limitations, were insufficient to account for the claimant's moderate concentrational problems. In *Ealy,* as here, the ALJ adopted the "simple routine" limitation directly from the finding of a non-examining source. *Id.* at 509; (Tr. 224). However, in both cases, the non-examining finding that the claimant could perform "simple routine" work was accompanied by *additional* limitations which were later omitted from the hypothetical question by the ALJ. In *Ealy,* the "streamlined" version found in the hypothetical question limited the claimant to "simple routine" work but failed to include the same assessor's finding that the claimant could only work in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516 (punctuation in original).

Likewise here, the hypothetical question did not account for the finding that Plaintiff's ability "to perform *at a consistent pace without an unreasonable number and length of rest*

*periods*" was moderately limited (Tr. 223)(emphasis added). In the present case, the non-examining conclusion that Plaintiff would need to work at a reduced pace is also supported by consultive exam observations (Tr. 210). As in *Ealy,* the failure to fully account for Plaintiff's moderate pacing deficiencies invalidates the VE's testimony.

In addition, Plaintiff is correct that the hypothetical question did not adequately address his limitations as a result of CTS. Although the ALJ found that CTS was a severe impairment at Step Two, her question to the VE did not encompass his actual degree of limitation. To be sure, the hypothetical question precluded work around "dangerous, moving machinery" and "even moderate exposure to vibration of the hands" (Tr. 53, 244). However, it did not address the finding of manipulative impairments, including limitations in his ability push, handle, finger, and feel with his right hand (Tr. 243). These omissions are of particular concern, given that the VE's three job findings (stock clerk, janitor, and dish washer) would all appear to require the continuous use of the hands and wrists (Tr. 54). Independent of the hypothetical's failure to address moderate concentrational difficulties, the omission of Plaintiff's well established manipulative limitations from the hypothetical question constitutes reversible error.

However, because present transcript does not establish an "overwhelming" case for disability, the errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). Accordingly, the case should be remanded to the administrative level for

further proceedings consistent with this opinion.

The remaining two issues raised in Plaintiff's motion would not, by themselves, support a remand. I will nevertheless discuss them in the interest of completeness.

### B. Substantial Evidence

Plaintiff argues more generally that the ALJ downplayed the great weight of evidence supporting a disability finding, contending that instead, she "cherry picked" from the transcript to support her non-disability determination. *Plaintiff's Brief* at 9-11. He contends that the ALJ's selective use of evidence supporting her decision (and her failure to discuss material supporting the opposite conclusion) amounts to a distortion of the record. *Id.*

Under the deferential substantial evidence standard, an ALJ need not support his findings with preponderance of the evidence. *Mullen, supra,* 800 F.2d at 545. By the same token, "cherry picking" or disregarding favorable statements from a record that as a whole, demonstrate the need for long-term mental health intervention, amounts to a distortion of the record. "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record" *Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000) (Roberts, J.)( citing *Cotter v. Harris,* 642 F.2d 700, 706 (3rd Cir.1981). Likewise, "[s]ubstantial evidence cannot be based on fragments of the record." *Laskowski,* at 482.

With the exception of the error discussed in Section A, substantial evidence supports the ALJ's finding that Plaintiff did not experience disability level mental impairments. The

ALJ permissibly found that Plaintiff's range of daily activities, including driving, shopping, and bill paying stood at odds with the disability claim (Tr. 30). Her findings are consistent with Plaintiff's testimony that he also hunted and attended sporting events (Tr. 44). While Plaintiff contends that the ALJ's summation of Dr. Horner's consultive exam only mentioned the positive findings, the ALJ acknowledged the limitations found by Dr. Horner by finding that PTSD and depression were severe impairments of at the second step of her analysis (Tr. 27). Likewise, the ALJ's finding of moderate deficiencies in concentration, persistence, and pace (Tr. 27-28) reflect Dr. Horner's observation that Plaintiff was slow to answer questions (Tr. 210).

While the ALJ's citation of the medical records is mostly restricted to material supporting her non-disability conclusion, the decision makes mention of all of the treating, consultive, and non-examining sources found in the transcript. Moreover, she was not required all the material supporting the disability claim given that substantial evidence supported the opposite conclusion. *Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)). Consistent with the ALJ's findings, my own review of the medical records shows that while Plaintiff experienced some level of limitation as a result of a PTSD, his psychological crises appear to have been precipitated by conflicts with his mentally ill wife, the death of a friend, his daughter's limitations as a result of a riding accident, and substance abuse (Tr. 151, 198-201). Although Plaintiff cites May, 2006 treatment notes for

the proposition that he was disabled, it is worth noting that the same notes indicated that he wanted to return to work (Tr. 152).

The ALJ also observed that although Plaintiff originally alleged disability as of September, 2001, his treatment from that month until January, 2006 was "sporadic" (Tr. 29). Plaintiff disputes the "sporadic" finding, arguing that "the ALJ erred in failing to investigate a clear absence of treatment records when the evidence indicated such records should have existed." *Plaintiff's Brief* at 11. However, it is unclear whether he is arguing that the ALJ erred by failing to procure these records, or, erred by failing to inquire into why the treatment record was "sporadic."

In any case, this argument fails for multiple reasons. First, assuming that existence of other treating records for this period, Plaintiff does not state how the "missing" records would change the ALJ's decision. Second, although Plaintiff was represented by counsel at the time of hearing, he provides no reason for his own failure to produce the records. *See Boyes v. Secretary of Health and Human Services* 46 F.3d 510, 512 (6th Cir. 1994); accord *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir.1971)("Claimant bears the burden of proving his entitlement to benefits");20 C.F.R. § 404.1512(a). As a general rule, where the existing records provided more than adequate grounds for determination, the ALJ is not required to "ferret out" additional records that Plaintiff neglected to procure. *Nabours v. Commissioner of Social Sec.,* 50 Fed.Appx. 272, 275, 2002 WL 31473794, *2 (6th Cir. 2002). Further, because the medical evidence before the ALJ was adequate to make a well-informed

determination, remand on this basis is not warranted.

### C. The Sentence Six Material

Plaintiff argues that the treating records submitted subsequent to the ALJ's May 26, 2009 decision support a "sentence six" remand. *Plaintiff's Brief* at 11-13 (Tr. 251-352). He contends that the latter-submitted evidence is both "new" and "material" to the ALJ's decision. *Id.* at 11-12 (citing 42 U.S.C. § 405(g)). Plaintiff's counsel states that despite his best efforts to procure these records before the administrative decision, he was unable to obtain them until almost one year after the hearing. *Plaintiff's Brief* at 13.

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id*. at 695–96. Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, *but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g). *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006).

The failure of Plaintiff's treating source to timely produce records treating records, despite "repeated requests," constitutes good cause. "A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). Further, because the latter-submitted material is not contained in the administrative transcript and is not duplicative of formerly submitted records it is "new." *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 641-642 (E.D.Mich.2005).

However, Plaintiff cannot show that these records are "material" to the ALJ's determination. In order to be eligible for DIB, Plaintiff would be required to show disability as of his date last insured ("DLI") of March 31, 2008 (Tr. 25). The latter-submitted records, spanning Plaintiff's psychological treatment from December, 2008 to Janauary, 2010, postdate the DLI by several months and are thus irrelevant to Plaintiff's condition on or before March 31, 2009. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988). Plaintiff cites Dr. Shenava's October, 2010 opinion that he was presently disabled for the proposition that the treating psychiatrist was also referring to his condition prior to March 31, 2008. *Plaintiff's Brief* at 13 (citing Tr. 331-332). To the contrary, while Dr. Shenava indicated that Plaintiff's psychological problems currently render him disabled, she not state that he was unable to perform any work prior to the March 31, 2008 expiration of benefits.

Further, Dr. Shenava's opinion provides particularly weak support for remand, given

-18-

that her personal treatment of Plaintiff did not commence until 11 months after the claim expired (Tr. 329). Thus, her opinion of his condition before March 31, 2008 (notwithstanding her brief reference to his prior treating records) has minimal probative value[5]. Because the newer records are immaterial to the claim, Plaintiff has not established grounds for a sentence six remand. It also bears noting that consistent with the records created before the expiration of benefits, the newer records show that Plaintiff's periods of increased symptomology were precipitated by transient emotional "stressors" such as his ongoing divorce and problems pertaining to his daughter's treatment.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #12] be DENIED and that Plaintiff's Motion for Summary Judgment [Doc. #10] be GRANTED, remanding this case for further proceedings under the fourth sentence of 42 U.S.C § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

---

[5] While this Court has recommended a sentence six remand where records created *after* the relevant period refute directly refute the ALJ's conclusions, *see Street, supra,* 390 F.Supp.2d 630, the newer records in this case do not provide insight into Plaintiff's condition prior to March 31, 2008.

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: January 31, 2012

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 31, 2012.

s/Johnetta M. Curry-Williams<br>
Case Manager